TEN MILE LUMBER CO *v.* GARNER.

[78 South. 776, Division B.]

1. MASTER AND SERVANT. *Injury to servant. Tools and appliances. Wrongful use.*

An employer is not liable in damages to one of its employees who is injured by a piece of steel flying from a maul while attempting to straighten a cant hook by placing it on a defective steel maul,

and striking it with an axe, where both axe and maul were improperly used, neither being intended for such use.

2. Same.

In such case the employer is not negligent in not having the cant hook properly repaired where it had no knowledge that it had been bent.

Appeal from the circuit court of Stone county.

Hon. J. H. Neville, Judge.

Suit by Ester Garner against the Ten Mile Lumber Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Tally & Mayson,* for appellant.

We respectfully submit that the peremptory instruction in this case should have been given. The appellee was not directed by the foreman or anyone having the right to direct his services to assist in straightening the peavey point. They were under no obligation, either to appellant or any one else to undertake to straighten the point where they were at work, the appellant maintaining a blacksmith shop for that especial purpose. It makes no difference how defective the maul may have been, for the purposes for which it was intended, it was never intended to be used as it was used on the occasion. The rule is probably universal, supported by well-considered authorities that if an employee uses an instrument without any compulsion from his employer, for a purpose for which it was not intended and he is injured thereby he cannot recover. It is said by a distinguished author whose utterances are always in favor of the employee, in a contest between master and servant that:

"Where a master discharges his duty by furnishing suitable tools, machinery, or appliances, but the servant uses them for a purpose not contemplated or intended, nor required by the orders under which he is working,

and in so doing receives an injury, he cannot make his own folly or negligence a ground for recovering damages against the master." 4 Thompson on Neg., 4000. Our own court has announced the same doctrine that Thompson does. *Bell* v. *Refugee Oil Mill Co.*, 77 Miss. 387,—So. 382.

"On this principle it has been held that where a mere foreman of work orders an ordinary employee to use a defective appliance not furnished by the employer for such use, in consequence of which the employee so commanded, is injured, the negligence will be deemed that of a fellow servant, and the master will not be liable. 4 Thompson on Neg., 4000.

"The master is not liable for injuries caused by the use of appliances for purposes for which he had no reason to believe they would be used." *Kreyes* v. *Longville Longleaf Lumber Co.* (La.), 52 So. 1018.

"An employer is not liable in damages to one of its employees where the injury resulted from putting one of the appliances supplied, to a use for which it was not intended in an improper manner." *Illinois Central R. R. Co.* v. *Daniels*, 73 Miss 258, 19 So. 830; See, also, *Vicksburg Elc. Co.* v. *Vaugn*, 27 So. 599; *Capital Oil Works* v. *Block*, 70 Miss. 8, 12 So. 26; *Hatter* v. *Railroad Co.*, 69 Miss. 642, 13 So. 827.

"If new functions are imposed upon the instrumentalities by the servants themselves a situation supervenes, which the master cannot be held to have anticipated." 1 Labatt, Master and Servant, 27.

The consensus of testimony of all witnesses for plaintiff was that the axe was not a proper instrument to straighten to peavey with. It had been diverted to a purpose for which it was never intended. There is no charge that the axe was defective for the purpose for which is was intended, nor that there is any defect in the maul on the side the peavey point was placed. There isn't a semblance of proof in the record, as to

where the silver came from and injured the appellee. It is a mere conjecture that it came from the maul. That falls short of establishing appellee's case, since the *res ipsa loquitur* doctrine does not apply to master and servant.

We insist that the case of *Miss. Central R. R. Co. v. Bennett*, 111 Miss. 163, 71 So. 310, is a much stronger case for plaintiff than the one at bar, yet the court held in that case that a peremptory instruction should have been given. In the Bennett case, the injury occurred while he was working on the instrument, an anvil that he was required to work on, and one about which he had complained on account of obvious defects. He was using the anvil for the purpose for which it was intended, but in the case at bar it was never intended that the axe or the maul should be used for the purpose of straightening a peavey. The axe and maul are both simple tools and if there were any defects, they were perfectly obvious to appellee and his father. The master was therefore under no obligation to inspect such tools. The great weight of authority supports the contention that an employer owes no duty to the employee of inspecting simple tools, when the defects are obvious. *Karras v. Chicago, etc., R. R. Co., L. R. A.* 1917; *E. Ft. Smith, etc., R. R. Co. v. Holcomb, L. R. A.* 1916F, 1237.

As to the right to recover for injuries from flying splinters caused by blows, most authorities support the proposition that it cannot be done. And especially is this true, if any defect is open and obvious; the tool was voluntarily used and for a purpose for which it was not intended. *L. Houx v. Union Construction Co., L. R. A.* (N. S.) 901, and note.

We therefore respectfully submit that the case ought to be reversed and dismissed.

*J. C. Ross* and *Mize & Mize,* for appellee.

All appellant complains of is that there was no liability and that the court erred in not giving a peremptory instruction for the appellant. This case was brought on the theory that it was appellee's duty to mend such tools as might become unfit to work with during the progress of the work, that he was acting under orders to this effect and that the appellant failed to furnish him with suitable and proper tools with which to mend his peavey and that the tools appellant did furnish him with for this purpose, to wit, the maul and the axe were not reasonably safe.

The case of *Skelton* v. *Pacific Lumber Co.,* 140 Cal. 511, 74 Pac. 14, lays down the proper rule: "The duties which a master owes to his servants and which duties he must perform, are to furnish suitable machinery and appliances with which the service is to be performed and to keep them in order and repair."

Now, when the appellant required appellee to mend tools that became unfit for use in the course of the work, it was appellant's duty to furnish appellee with suitable and proper tools with which to do this repair work, and to see that they were in a reasonably safe condition.

Analyzing appellee's case in the light of the above rule, what do we find? It became necessary to repair the peavey that became unfit for use during the progress of the work. What was furnished appellee to do this repair work with? A maul, which would have been one of the proper tools if it had been in fit condition; but this record bristles with evidence that the maul was absolutely in unfit condition to be used as a maul. Therefore appellee attempted to use the maul in attempting to mend the peavey in the manner it could best be used, to wit: laying it down on its side and placing the peavey point on it to be hit. Now,

was a reasonably proper, fit and suitable tool furnished appellee to be used to hit the peavey point with? What was furnished to hit the peavey with? An axe. Was this a suitable tool for this purpose? All the evidence shows that it was not a fit and suitable tool for the purpose and this evidence is undisputed. But it was the only tool furnished that could be used to hit with.

Counsel for appellant makes the contention that appellee should not recover for the reason as alleged by appellant that he was using the tools in the manner he should not have used them, and the first authority he cites is 4 Thompson on Negligence, sec. 4000, to wit: "Where a master discharges his duty by furnishing suitable tools, machinery or appliances, but the servant uses them for a purpose not contemplated or intended nor required by the orders under which he is working, and in so doing receives an injury, he cannot make his own folly or negligence a ground for recovering damages against the master."

This section is the law everywhere by weight of authority, but the trouble with appellant's case is that the facts do not come within the rule announced by said section in this: Thompson says: "Where a master has furnished suitable tools, etc." and the servant uses them in a manner not intended, the master is not liable. In the instant case, the very complaint of the declaration is that no suitable tools were furnished with which to do the work of repairing the peavy. If suitable tools had been furnished to mend the peavey with and appellee had used them in a manner not intended, then appellee would have had no case.

Appellant cites the case of *Bell* v. *Refuge Oil Co.*, 77 Miss. 387, and quotes therefrom as follows: "On this principle it has been held that where a mere foreman of work orders an ordinary employee to use a defective appliance not furnished by the employee

for such use, in consequence of which the employee is injured, the negligence will be deemed that of a fellow servant and the master will not be liable.''

That case is where an employee used a defective appliance not furnished for the purpose the servant used it, but in this case we have a defective appliance furnished for the purpose for which the servant was using it, but the servant got hurt on account of it being defective and unsuitable.

Also sec. 4001, 4 Thompson on Negligence, cited by appellant, to wit: ''The master is not liable for injuries caused by the use of appliances for purposes for which he had no reason to know that appellee was using the tools here for the purpose intended by appellant for which they should be used. So with all the cases cited by appellant.

The term ''suitable'' used with reference to the master's duty means compatible with safety. *Chohoney* v. *Quincy,* 122 S. W. 1025, 223 Mo.. 659.

In the case of *Pfeiffer* v. *Eastern Metal Works,* 258 Ill. 427, 169 Ill. App. 613, plaintiff was a helper in a blacksmith shop and was supplied with five or six chisels to use in his work. While at work a chisel broke and a particle of steel flew in his eye and destroyed the sight. Plaintiff testified that he took up a new chisel and that it broke about an inch or an inch and a half from the point at the first stroke. Judgment for one thousand, five hundred dollars was affirmed, the court holding that the evidence warranted a finding that the piece of steel came from the chisel and that the defendant was bound to use reasonable care in furnishing safe tools. *Buchanan & Gilder* v. *Blanchard,* 127 S. W. 1153; *Mercer* v. *Atl. C. Line Co.,* 154 N. C. 399; *Allen* v. *Cin., No.* and *T. P. Ry. Co.,* 143 Ky. 723; *Dales* v. *Chicago, B. & Q. R. R. Co.,* 169 Mo. App. 183; *New York and Harlem R. R. Co.* v. *Vizvari,* 210 Fed. 118.

The case just above cited was affirmed by circuit court of appeals in 126 S. C. A. 632, L. R. A. 1915, C. P. 9, and was approved and cited in the case of *Caveretto* v. *Alaska Gastineau Mining Co.; Gekas* v. *Oregon-Washington R. R. Co.,* 75 Ore. 243, 146 Pac. 970; *Pushcart* v. *N. Y. Ship Building Co.,* 81 N. J. Law, 261, 81 Atl. 113, 20th approval. The case of *Harvey* v. *Rome Scale Co.,* 79 S. E. 487.

The doctrine set out in the cases cited *supra,* and contended for by appellee is announced in the following cases in which injuries where sustained from beating with defective tools and a splinter entered servant's eye, the master is held liable. *Freeman* v. *Star,* 138 S. W. 1150; *Potvin* v. *West Bay City Ship Building Co.,* 156 Mich. 201; *Blankenship* v. *A. M. Hughes Paint & Glass Co.,* 154 Mo. App. 483; *Republic Iron & Steel Co.* v. *Ohler and Indiana Case,* 68 N. E. 901.

Counsel for appellant says that there is no evidence as to whether the silver came from the maul or from the axe. We say this makes no difference, because the allegations show that the maul was in an unsafe condition to such an extent that it could not be used to hit with and that the axe was an improper tool to hit the peavey with and that said maul and said axe were all the tools furnished by defendant with which to do the work of straightening the peavey, and, whether the silver came from the maul or from the axe, appellant would be liable as the declaration alleged that the silver came from the process of beating or repairing the peavey by the use of said unsuitable and improper tools and one of which was not in a reasonably safe condition. 6 Thompson on Negligence (2 Ed.), sec. 7775, lays down the following: "Inability to designate with certainty the defect causing the injury. The mere fact that no witness, in an action for personal injury to an employee by the use of alleged de-

fective machinery, is able to name with absolute certainty the exact mechanical defects which caused the occurrence, will not bar a recovery where the immediate cause of the injury is clearly shown, and it appears that the employer's negligence caused the injury." This is applicable here.

Appellant relies strongly on the case of *Mississippi Central* v. *Bennett,* 111 Miss. 163. That case is not applicable to the instant case for a number of reasons. By reference to that case, the court will see that the following language appears in the opinion of the court at p. 169. "On the 20th of February, 1914, appellee with the assistance of a helper, was engaged in cutting a five-eighths inch iron rod into two pieces, and had cut it pretty well in two when he shoved the cut portion over the edge of the anvil so the helper could break it off by striking it with a sledge hammer. This the helper proceeded to do, striking, according to the evidence for the appellee, both the rod and the edge of the anvil a glancing blow, and when he did so, a small splinter from either the rod or the anvil flew up and struck the appellee in the eye, resulting in his losing his sight thereof."

The instant case presents no such state of facts, because the appellant knew, through its general foreman, Melvin Garner, and section foreman, Lawrence Garner, that the maul in question was defective because it had been condemned by the steel gang, who refused to use it on account of its condition, and it was then brought to Lawrence Garner, the section foreman, for his crew to use, by Melvin Garner, the general woods superintendent, and the good maul of said crew was taken from them with actual knowledge, if the court please, so that the Bennet case is not applicable on that point. This is not a case of inspection of tools, because that doctrine only applies to impute knowledge to the master and there is no dispute here

but what the master had actual knowledge of the un--
safe condition of the maul.

The case of Edward L. Houx U. S. Construc-
tion Co. 30 L. R. A. (N. S.) 801, and note thereto, so
strongly relied on by appellant on the last page of its
brief, when inspected and carefully read will be found to
be authority for appellee.

In all cases of negligence, it is incumbent on the
one getting hurt to bring home to the defendant, so
to speak, negligence. Now, where is the negligence in
this case? Appellant required appellee to mend tools
that became unfit during the work. In the absence
of such rule, it is common knowledge that servants
do mend such tools as appellee was mending when
they become unfit for service and are needed in the
scope of their employment, and that they do not trot
to the blacksmith shop with every small complaint.

The question, where is the negligence here? is easily
answered. First, it was negligence on the part of ap-
pellant for Melvin Garner, its woods superintendent,
to bring the maul that the steel gang had refused to use
on account of its condition to the crew of which ap-
pellee was a member for them to work with.

Second, it was negligence on the part of appellant to
furnish appellee's crew with only an axe to strike with
in repair of the peavey, if it needed it, instead of
furnishing them with a reasonably safe maul.

We submit that this is a clear case of negligence of
the master, and, there being no assumption of risk we
insist that the case should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Ester Garner, a minor of nineteen years of age,
was employed by the Ten Mile Lumber Company, a
corporation, and was engaged with a track and bridge
crew of the said company with his father, who was
also an employee of the company. In the course of the

work on a bridge on one of the lines of the company a peavey, or cant hook, was bent to an extent that it needed straightening or repairing. Some of the employees of the company and the appellee undertook to repair the cant hook by laying the hook upon a steel maul and striking the hook, to straighten it, with an axe. While this was being done, the appellee held the cant hook in position, and a piece of the steel from the maul struck appellee in the eye, inflicting a permanent injury, for which the appellee sued the appellant and recovered judgment. It appears in the evidence that the steel maul was used for the purpose of driving spikes in railroad cross-ties to hold rails in position, and also in driving bolts to hold the rails in position where they were joined together and connected. The crew having this maul, and it having become damaged and unfit for use for that purpose, came to the crew of which appellee was a member and borrowed a steel maul which they had, they being at the time engaged in work on a bridge. The steel maul was not used in the work in the present case as a maul, but was used to place the hook upon while it was being struck with an axe. It appears in the evidence that the company maintained a blacksmith shop for the repair of tools, and that the appellee and his witnesses testified that the proper place to repair the peavey, or cant hook, was at the blacksmith shop. The appellant requested a peremptory instruction, and assigns for error the refusal of the court below to grant this instruction.

It appears that the defect was not in the axe or in the cant hook, but that it was in the maul, and that the maul was not being used for the purpose for which it was assigned for use by the company, and that the axe was not a proper instrument to use in repairing a peavey, or cant hook. This case is governed by the case of *Illinois Central R. R. Co.* v. *Daniels,* 73 Miss.

258, 19 So. 830, where the court laid down the following rule:

"An employer is not liable in damages to one of its employees where the injury resulted from putting one of the appliances supplied to a use for which it was not intended in an improper manner."

See, also, *Vicksburg etc., Co.* v. *Vaughn*, 27 So. 599; *Capital City Oilworks* v. *Black*, 70 Miss. 8, 12 So. 26; *Hatter* v. *Railroad Co.*, 69 Miss. 642, 13 So. 827; *Railroad Co.* v. *Bennett*, 111 Miss. 163, 71 So. 310.

It further appears that whatever defect there was in the cant hook was caused by its being bent in the course of work, and it does not appear that there was any notice of this defect brought to the attention of the master, or any neglect on the part of the master in having it properly repaired. The appellant, having undertaken to repair this tool under these circumstances, was not entitled to recover from the master, and the peremptory instruction should have been given.

The judgment is reversed, and the cause dismissed.

*Reversed.*